No. 11-70024

IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

_____

ALFRED BOURGEOIS,
*Petitioner-Appellant*,

v.

UNITED STATES OF AMERICA,
*Respondent-Appellee.*

_____

On Appeal from the Denial of Petition for Writ of Habeas Corpus by the
United States District Court for the Southern District of Texas
(CAPITAL CASE)

**_____**

**PETITIONER-APPELLANT'S REPLY BRIEF IN SUPPORT OF
APPLICATION FOR CERTIFICATE OF APPEALABILITY**

**_____**

Leigh Skipper
*Federal Defender*

Victor J. Abreu
Jennifer Givens
*Assistant Federal Defenders*
Federal Community Defender Office
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520

Counsel for Appellant

Dated: August 16, 2012

# Table of Contents

Table of Authorities.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . iii

ARGUMENT IN REPLY. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

I.     THE GOVERNMENT MISUNDERSTANDS THE APPROPRIATE LEGAL STANDARD FOR ISSUANCE OF A CERTIFICATE OF APPEALABILITY. . . . . . . . . . . . . . . . . . 1

II.    APPELLANT IS ENTITLED TO A COA ON ALL CLAIMS.. . . . . . . . . . . . . . . . . 3

    Claim I.    THIS COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER THE DISTRICT COURT ERRED IN DISMISSING, WITHOUT ALLOWING AN EVIDENTIARY HEARING, APPELLANT'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REASONABLY CHALLENGE JURISDICTION.. . . . . . . . . . . . . 3

        A.    The Government Asks this Court to Apply the Incorrect Standards of Review.. . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

        B.    The Government Ignores the Extent of Appellant's Proffer. . . 5

        C.    The District Court's Improper Dismissal of Appellant's Expert Witness Proffer.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

    Claim II.    THIS COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO PRESENT AVAILABLE EXPERT TESTIMONY TO REBUT THE GOVERNMENT'S ASSERTION THAT JG1999 WAS SEXUALLY ASSAULTED.. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

        A.    Deficient Performance. . . . . . . . . . . . . . . . . . . . . . . . . . . . 11

            1.    Evidence of alleged semen.. . . . . . . . . . . . . . . . . . . . 11

            2.    Evidence of alleged vaginal trauma.. . . . . . . . . . . . . . 15

B. Prejudice. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 16

Claim III. THIS COURT SHOULD GRANT A COA ON THE ISSUE OF
WHETHER COUNSEL PROVIDED INEFFECTIVE ASSISTANCE
DURING THE PENALTY PHASE.. . . . . . . . . . . . . . . . . . . . . . . . . . 21

A. Trial Counsel's Deficient Performance. . . . . . . . . . . . . . . . . . 22

B. Appellant was Prejudiced.. . . . . . . . . . . . . . . . . . . . . . . . . . . 27

CONCLUSION. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 29

# Table of Authorities

## FEDERAL CASES

Avila v. Quarterman, 560 F.3d 299 (5th Cir. 2009). . . . . . . . . . . . . . . . . . . . . . . . 7

Barefoot v. Estelle, 463 U.S. 880 (1983). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Blue v. Thaler, 665 F.3d 647 (5th Cir. 2011). . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Brady v. Maryland, 373 U.S. 83 (1963). . . . . . . . . . . . . . . . . . . . . . . . . . . 12, 14

Coker v. Georgia, 433 U.S. 584 (1977). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Garcia v. Quarterman, 257 Fed.Appx. 717, 723 (5th Cir. 2007). . . . . . . . . . . . . . 19

Glover v. United States, 531 U.S. 198 (2001). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Jackson v. Virginia, 443 U.S. 307 (1979). . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4

Kennedy v. Louisiana, 554 U.S. 407 (2008). . . . . . . . . . . . . . . . . . . . . . . . . . . 17

Lafler v. Cooper, 132 S. Ct. 1376 (2012). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Lockhart v. Fretwell, 506 U.S. 364 (1993). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18

Miller-El v. Cockrell, 537 U.S. 322 (2003). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2

Porter v. McCollum, 130 S. Ct. 447 (2009). . . . . . . . . . . . . . . . . . . . . . . . . . 8, 15

Rompilla v. Beard, 545 U.S. 374 (2005). . . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

Skaggs v. Parker, 235 F.3d 261 (6th Cir. 2000). . . . . . . . . . . . . . . . . . . . . . . 27, 28

Slack v. McDaniel, 529 U.S. 473 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 1, 29

Soffar v. Dretke, 368 F.3d 443 (5th Cir. 2004). . . . . . . . . . . . . . . . . . . . . . . . . 17

<u>Strickland v. Washington</u>, 466 U.S. 668 (1984). . . . . . . . . . . . . . . . . . . . . . . . 5, 6, 8

<u>United States v. Briggs</u>, 939 F.2d 222, 228 (5th Cir. 1991). . . . . . . . . . . . . . . . . 6

<u>Williams v. Taylor</u>, 529 U.S. 362 (2000). . . . . . . . . . . . . . . . . . . . . . . . . . . . 18, 19

**STATE CASES**

<u>South Carolina v. Susan Smith</u> (S.C. 1994). . . . . . . . . . . . . . . . . . . . . . . . . . . . 19

<u>Andrea Yates v. State</u>, 171 S.W.3d 215 (Tex. App. 2005). . . . . . . . . . . . . . . . . . 19

**DOCKETED CASES**

<u>United States v. Moussaoui</u>, No. 01-CR-455 (E.D. Va.). . . . . . . . . . . . . . . . . . . 20

**ARGUMENT IN REPLY**

**I.    THE GOVERNMENT MISUNDERSTANDS THE APPROPRIATE LEGAL STANDARD FOR ISSUANCE OF A CERTIFICATE OF APPEALABILITY**

The Government's Response is plagued with confusing and misguided references to the "threshold inquiry" relevant to assessing whether a COA is warranted. In some instances the Government faults Appellant for straying beyond the "threshold inquiry." See, e.g., GR[1] 15 ("Bourgeois seeks a much more thorough review than that required by a 'threshold inquiry'"). The Government, however, simultaneously faults Bourgeois for failing to provide specific facts in support of his claims and/or implies that in making its COA assessment, the Court's limited review at this stage of the proceedings actually works against Appellant. See, e.g., id. at 21, 27, 31.

It is evident that the Government is attempting to use this "threshold inquiry" against Appellant. The Government's view reflects a misunderstanding of the COA standard set forth by the Supreme Court. The "threshold inquiry" language relevant to COA requests was used by the Supreme Court in Slack v. McDaniel, 529 U.S. 473,

---

[1]Citations to the Record on Appeal are cited as "ROA" followed by the page number. Transcripts not included in the ROA are cited as "Tr." followed by the date and page number. Appellant's Brief in support of a COA is cited as AB. The Government's Response Brief is cited as GR. All emphasis is added unless otherwise noted.

482 (2000), and <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 336 (2003). In <u>Miller-El</u> the

Court explained, "[t]his threshold inquiry does not require full consideration of the

factual or legal bases adduced in support of the claims." 537 U.S. at 336. The Court

added that "a COA does not require a showing that the appeal will succeed," noting

that "a court of appeals should not decline the application for a COA merely because

it believes the application will not demonstrate an entitlement to relief." <u>Id.</u> at 337.

"[A] claim can be debatable even though every jurist of reason might agree, after the

COA has been granted and the case has received full consideration, that petitioner

will not prevail." <u>Id.</u> at 338.

The "threshold inquiry" is not meant to limit Appellant's ability to proffer the

facts and law in support of his request for a COA. Instead, it is intended to prevent

an appellate court from making a full merits assessment in lieu of the initial COA

assessment at this stage of the proceedings.[2] <u>Miller-El</u>, 537 U.S. at 342 ("Deciding

the substance of an appeal in what should only be a threshold inquiry undermines the

concept of a COA. The question is the debatability of the underlying constitutional

claim, not the resolution of that debate."). As the Government has acknowledged,

---

[2]In any event, Appellant did not have the space or opportunity to address the full merits of each of his claims in his Application for a COA. Appellant submits that he should be afforded a COA on his claims and the opportunity to fully brief and argue each claim before the Court renders its judgment.

any doubts regarding the propriety of a COA should be resolved in favor of the Appellant.  <u>See</u> GR 11 (citing <u>Blue v. Thaler</u>, 665 F.3d 647, 654 (5th Cir. 2011); <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 (1983)).

**II.    APPELLANT IS ENTITLED TO A COA ON ALL CLAIMS.**

**CLAIM I.    THIS COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER THE DISTRICT COURT ERRED IN DISMISSING, WITHOUT ALLOWING AN EVIDENTIARY HEARING, APPELLANT'S CLAIM THAT TRIAL COUNSEL WAS INEFFECTIVE FOR FAILING TO REASONABLY CHALLENGE JURISDICTION.**

Trial counsel ineffectively failed to challenge jurisdiction, an essential element of the crime.  The Government had the burden of proving that Appellant inflicted the fatal injuries on the decedent during the narrow window of time when they were on federal lands.  The Government's response to Appellant's Application for COA incorrectly characterizes Appellant's claim as a challenge to the sufficiency of the evidence presented at trial.  That is not the case.  In his habeas proceedings, Appellant proffered significant evidence that trial counsel had failed to present at trial – evidence that indicates there was no federal jurisdiction, and that would have led to a different outcome at trial.  The district court failed to hold a hearing on this claim and heard only a piecemeal proffer by expert witnesses.  Even with the limited proffer, the district court improperly discredited Appellant's expert witnesses.  This

Court should grant a COA.

### A. The Government Asks this Court to Apply the Incorrect Standards of Review

The Government erroneously attempts to recharacterize Appellant's ineffective assistance of counsel claim as a sufficiency of the evidence claim. <u>See</u> GR at 26-27. The claim that Appellant made to the district court, and the claim for which he now seeks a COA, is that trial counsel was ineffective for failing to challenge the Government's evidence of jurisdiction. This is not a sufficiency of the evidence claim. Sufficiency of the evidence claims necessarily presume that all available evidence was presented at trial, and relief is only granted on those claims "if it is found that <u>upon the record evidence adduced at the trial</u> no rational trier of fact could have found proof of guilt beyond a reasonable doubt." <u>Jackson v. Virginia</u>, 443 U.S. 307, 324 (1979).

In contrast, ineffective assistance of counsel claims are not predicated on the evidence adduced at trial. By their very nature, ineffective assistance of counsel claims point out what the trial lacked because of counsel's failures. Mr. Bourgeois proffers significant evidence that trial counsel could have and should have presented to challenge the Government's evidence on the jurisdiction element of the offense. The applicable prejudice standard is the same for all ineffective assistance of counsel

claims: "that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." <u>Strickland v. Washington</u>, 466 U.S. 668, 693 (1984). Appellant's trial counsel needed only establish reasonable doubt as to federal jurisdiction. Here, to obtain a COA, Appellant need only demonstrate that it is debatable whether effective trial counsel could have established reasonable doubt as to federal jurisdiction. Appellant has met that standard.[3]

### B. The Government Ignores the Extent of Appellant's Proffer

Perhaps because the Government has misconstrued the standard of review for ineffective assistance of counsel claims, it asks this Court to review only the evidence presented at trial before concluding whether to issue a COA. The Government incorrectly states that Appellant's request for a COA "relies wholly on . . . one statement" from Dr. Rouse's autopsy report. GR 26. This is incorrect. This Court must consider the entirety of Appellant's proffer to the district court. That proffer refers to the trial evidence, but it also includes expert witness opinions that were not

---

[3] The Government contends that, at trial, it only needs to prove the jurisdictional element of the offense by a preponderance of the evidence. GR 24-25. Appellant disagrees, as set forth in his COA Application. AB 16 n.4. To the extent that the question of the burden of proof remains open, Appellant respectfully suggests that, upon the grant of a COA, the parties be permitted to submit briefing on this issue.

presented at trial and an admission by trial counsel that he misunderstood the law of federal jurisdiction and therefore never considered challenging the Government's evidence.[4]  AB 15-16.  Based on this full proffer, there is a debatable issue deserving of a COA.

This Court also may consider the trial prosecutor's notes in support of Appellant's COA application.[5]  See AB 13; GR 26 n.5.  The prosecutor's notes are part of Appellant's proffer in support of his IAC-jurisdiction claim.  The fact that they were revealed voluntarily is irrelevant to their admissibility.  See GR 26 n.5 ("the notes were provided to Bourgeois' habeas counsel in an effort of full disclosure").  Although the district court did not permit Appellant to question Dr. Rouse using the prosecutor's notes, if the court had granted a full hearing on in the IAC-jurisdiction claim Appellant could have called the prosecutor as a witness and asked him about his notes, demonstrating that he thought jurisdiction might be in question.  In any

---

[4] Appellant and the Government proffered several expert witness opinions to the district court regarding the IAC-jurisdiction claim.  AB 13, 15.  Although it was improper for the district court to accept a proffer from the Government without holding a full hearing on Appellant's claim, id. at 17 (citing United States v. Briggs, 939 F.2d 222, 228 (5th Cir. 1991)), neither party's expert witnesses could conclude that the fatal blows were delivered on the Corpus Christi Naval Air Station.

[5] The Government is correct that the notes pertain to the prosecutor's interview with Dr. Rouse.  Appellant mistakenly wrote in his Brief that the notes were from the prosecutor's interview with Dr. Kagan-Hallet.

case, the notes are relevant and admissible to support the COA standard that the claim is at least debatable.  <u>Avila v. Quarterman</u>, 560 F.3d 299, 304 (5th Cir. 2009).

**C.     The District Court's Improper Dismissal of Appellant's Expert Witness Proffer**

In his Application for COA, Appellant notes that the district court improperly discredited Appellant's proffered expert witnesses.  <u>See</u> AB 18-19.  Because the Government's Response adopts the lower court's credibility findings, Appellant will explain why those findings were improper and why his expert witness opinions support his Application for a COA.

Without the benefit of an evidentiary hearing, the district court found Dr. Spitz's proffered declaration not credible because, in a portion of that declaration, Dr. Spitz expressed doubts about the accuracy of AB1994's trial testimony. Op. 152-153. The district court erred by entirely discounting Dr. Spitz's opinions without considering what effect those opinions might have had on the jury.  If Dr. Spitz had testified at trial, jurors could have credited some or all of his opinions.  <u>See</u> Tr. 3/16/04 (Guilt-Phase Jury Instructions), 63 ("Your job is to think about the testimony of each witness you've heard and decide how much you believe of what each witness had to say."); <u>Id.</u> at 65 ("You should judge [expert] testimony like any other testimony.  You may accept it or reject it or give it as much weight as you think it

deserves considering the witness' education and experience, the soundness of the reason for the opinions and all the other evidence in the case."). It was not reasonable for the district court to discount the effect of Dr. Spitz' proffer. Porter v. McCollum, 130 S.Ct. 447, 455 (2009) ("While the State's experts identified perceived problems with the tests that [the defense expert] used and the conclusions that he drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge.").

Likewise, it was unreasonable for the district court to discredit the opinions of Dr. Leestma for "ignoring [AB1994's] testimony and any other evidence that would put JG1999's injuries into context," Op. 154, and because Dr. Rouse disagreed with his methodology, id. at 158-160, 164. Dr. Leestma's opinions could have had an effect on the jury, and the district court was required to consider that effect in light of all the other evidence. See Porter, 130 S.Ct. at 455; Strickland, 466 U.S. at 693.

The opinions of both Dr. Spitz and Dr. Leestma both support Appellant's Application for a COA from this Court.

**Claim II.** **THIS COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER TRIAL COUNSEL WERE INEFFECTIVE FOR FAILING TO PRESENT AVAILABLE EXPERT TESTIMONY TO REBUT THE GOVERNMENT'S ASSERTION THAT JG1999 WAS SEXUALLY ASSAULTED**

Trial counsel were ineffective for failing to present evidence to rebut the allegation that semen was found and JG1999 was sexually assaulted. AB 20-54. The Government's Response employs the wrong legal standard, attempts to defend trial counsel's deficient performance by ignoring the actual record, and significantly understates the devastating impact of the alleged sex abuse evidence on the verdict.

The Government asserts that trial counsel's performance was neither deficient nor prejudicial because Appellant's habeas experts "could question but not conclusively eliminate the possibility of sexual assault." GR at 35, 40. To obtain a COA, Appellant need not have conclusively eliminated the possibility of sexual assault. Instead, Appellant need only show that reasonable jurists could debate whether he was prejudiced by trial counsel's failure to present evidence that would have supported an argument rebutting the Government's allegation of sexual abuse. Appellant has more than met this burden. Indeed, the Government's acknowledgment that Appellant presented sufficient evidence to "question" whether there was a sexual assault is a concession of Mr. Bourgeois' entitlement to a COA.

Moreover, Appellant described the overwhelming evidence trial counsel could

have presented in support of an argument that no semen was found and there was no sexual assault. Trial counsel could have presented expert testimony that no semen was detected on the rectal swabs; the FBI's p30 results were actually "weak" and "very weak" positive, and that according to the FBI's own protocol, when you have borderline levels of p30, the presence of semen can only be confirmed through the observation of sperm; no sperm were found on the microscopic searches; p30 is commonly found in male and female bodily fluids; no acid phosphatase (a chemical found in abundance in semen) was ever detected; the Government's own expert pathologist, Dr. Rouse, found <u>no</u> evidence of physical trauma to JG-1999's vagina or anus in the autopsy; and records from the Sex Abuse Nurse Examiner (SANE) corroborate Dr. Rouse's finding of no trauma. AB at 25-40. All of this unpresented evidence, when evaluated in conjunction with the evidence the jury heard about the presence of no male DNA, despite multiple highly sensitive DNA tests,[6] AB at 22-23, would have supported an argument at trial that <u>no</u> semen was found and JG1999 was <u>not</u> sexually abused.

Appellant also showed that he was prejudiced. As a result of counsel's deficient performance, the jury was left to weigh unrebutted, false, and highly

---

[6] The jury heard about the negative DNA results despite trial counsel's inexplicable objection to this evidence that helped the defense. <u>See</u> AB at 49-50.

inflammatory sex abuse evidence when deciding if Mr. Bourgeois should live or die. AB 40-42, 44-45. In addition, when the evidence rebutting the alleged sexual abuse is cumulatively assessed with the mitigating evidence counsel failed to adequately investigate, develop, and present, see Claim III, a significantly different picture of Appellant emerges. Had counsel presented this alternative picture, there is a reasonable probability that at least one juror would have voted for life.

### A. Deficient Performance

### 1. Evidence of alleged semen

Trial counsel could have presented evidence that the FBI's own protocols for the identification of semen support Appellant's experts' (Dr. Johnson and Alan Keel) conclusion that there was no semen found. AB 31-34. Rather than address the substance of this argument, the Government asserts that Appellant's reliance on the FBI protocols is an attempt to improperly amend the habeas petition to which it previously objected. GR 42 n.13. The Government is wrong.

The FBI protocol manuals were admitted as part of Appellant's 2255 hearing exhibits without objection from the Government. See ROA 4424-26 (Petitioner's Unopposed Motion to Admit Hearing Exhibit, ¶3 "Petitioner has contacted attorney for the Government . . . who indicated that the Government is NOT opposed to this request") (emphasis in original); see also ROA 5365-69 (district court overruling

Government's objection to use of the manuals during post 2255 hearing argument). The protocol manuals have been admitted, are a part of this record, and thus are properly before this Court.

The Government's current attempt to exclude the FBI protocols is not surprising when one examines their significance to this case. The 2002 FBI protocol manual states,

> Attempts to identify human semen in some categories of evidence **MUST be approached through the identification of spermatozoa** rather than by the detection of human specific proteins, such as p30. These categories would include ... stain extracts that possess **borderline levels of p30**.

See AB 31-32.[7] In this case, because the Government's p30 test results revealed "borderline levels of p30," (weak to very weak positive), and not "positive" as they claimed at trial,[8] the FBI was required by its own protocols to confirm the presence of semen through the identification of sperm. Because no sperm were ever detected

---

[7]These protocols were in effect at the time of Appellant's 2004 trial.

[8]Appellant moved to amend his habeas petition to include an allegation that the Government violated Brady v. Maryland, 373 U.S. 83 (1963), by failing to disclose the "weak and "very weak" p30 test result. The Government subsequently presented evidence to show that the results were disclosed to trial counsel. ROA 5621-5656. The Government has thus conceded that counsel were aware of the actual p30 results but failed to cross-examine the Government's experts about those results. The Government has all but conceded deficient performance.

in this case, the FBI should not have, indeed, according to its own protocols, <u>could</u> <u>not</u> testify that semen was found.  AB 31-34.[9]

Trial counsel attempted to argue that there was no evidence of semen but was precluded from doing so because he had presented no supporting evidence.  AB 24 (trial court sustained the Government's objection and rebuked defense counsel for making an unsupported argument that there was no semen).  Counsel could have used the FBI's "very weak" and "weak" p30 results and protocols to argue that, in the absence of detectable acid phosphatase (AP), sperm or male DNA, the Government's allegation that semen was detected was scientifically unsupportable.  Counsel, however, deficiently failed to cross-examine the Government's experts about the test results or to use the FBI's serological protocols to support his argument that "there was no semen." <u>See</u> AB 31-34.

Counsel could have also presented the testimony of Dr. Johnson to rebut the allegation that semen was found.  AB 28-31, 46-48.  The Government asserts that trial counsel were justified in relying solely on cross-examination of the Government's experts to challenge the purported semen and sexual assault evidence because Dr.

---

[9]Despite FBI forensic examiner Jerrilyn Conway's testimony at the 2255 hearing that a positive p30 test, alone, can confirm the presence of semen, GR 42 n.13, the Government has not and cannot deny that the FBI's own protocols show that a "weak to very weak" result is not enough to conclude that semen is present.

Johnson did not provide trial counsel with a timely or detailed report and "would have had to acknowledge the presence of some semen." GR at 39-40. Again, the Government is wrong. As Appellant's Brief shows:

- Any allegation that Dr. Johnson is responsible for the "late report" is clearly belied by the record, AB 50-54;

- The timing of the report only highlights counsel's deficient performance, id.;

- Had counsel requested a more comprehensive report from Dr. Johnson, she would have provided one, id. 52;

- Trial counsel's reliance on Dr. Johnson's two-page report (which the Government criticized) to cross-examination Government witnesses actually supports Appellant's claim of deficient performance because it shows that counsel considered the information she provided him in her report valuable to the defense, id. 49; and, most importantly,

- Had she been called as a witness at trial, Dr. Johnson would not have acknowledged the presence of semen but instead would have testified that there is no scientific basis upon which one could conclude that any semen was detected, id. 30-31.[10]

The Government's criticism of Dr. Johnson is part of a consistent pattern to blame experts for counsel's failures. See Claim III. Indeed, Dr. Johnson would have

---

[10]See also AB at 30-31 (discussing Appellant's expert Alan Keel's opinion that "there is no proof of semen being detected [ ] in the evidence that was presented at trial").

provided persuasive testimony to counter the allegation that semen was found.[11]

Counsel should have presented Dr. Johnson at trial.

### 2. Evidence of alleged vaginal trauma

Trial counsel also failed to present testimony from the Government's own expert pathologist, Dr. Rouse, challenging Dr. Benton's alleged observation of vaginal trauma in autopsy photos. AB 37-40, 45-46. After initially criticizing Dr. Johnson, the Government concedes her credibility, stating that trial counsel was justified in relying on the "expertise of Dr. Johnson" to challenge Dr. Benton's observations. GR 43. According to the Government, it was reasonable for counsel to rely on Dr. Johnson rather than "searching for additional experts who might eventually provide an opinion that would support an argument that there was no trauma." Id.

However, trial counsel did not rely on Dr. Johnson. They did not call Dr. Johnson as a witness at trial, so the jury never heard any of the evidence she could have provided. Moreover, while Dr. Johnson's hearing testimony challenged Dr. Benton's erroneous trial testimony regarding the detection of p30, semen and sperm,

---

[11]See Porter v. McCollum, 130 S.Ct. 447, 455 (2009) ("While the State's experts identified perceived problems with the tests that [the defense expert] used and the conclusions that he drew from them, it was not reasonable to discount entirely the effect that his testimony might have had on the jury or the sentencing judge.").

AB 34-37, Dr. Johnson did not opine about Dr. Benton's alleged observations of trauma as that is not her area of expertise. Thus, contrary to the Government's assertion, it was not "reasonable performance for counsel to rely on the expertise of Dr. Johnson" for that purpose. GR 43.

Counsel were deficient for failing to elicit from Dr. Rouse her autopsy findings that "[t]he external genitalia are those of a normal female child, and there **is no evidence of any trauma to the labia or introitus**. The Hymen is present and appears atraumatic. The back is straight **and the anus is unremarkable and atraumatic**." AB 37-38. Thus, Appellant agrees with the Government that trial counsel need not have continued searching for experts to opine that there was no trauma. GR at 43. Such an expert – Dr. Rouse – was already present in the courtroom and testified for the Government.[12]

### B. Prejudice

The Government's contention that, even at sentencing, there is no reasonable probability of a different outcome had trial counsel countered the evidence of alleged

---

[12]The Government and the District Court erroneously assert that this claim is based on the opinion of Dr. Spitz. GR 42-43; Op. 170-71. Dr. Spitz was not presented or relied upon at Appellant's 2255 hearing, thus his credibility is not at issue. The evidence trial counsel failed to present to counter Dr. Benton's alleged observations emanate from the Government's autopsy report and the SANE records. AB 37-40.

semen and sexual trauma, is wrong.  The Government conceded that evidence of semen "certainly added to the egregiousness of Bourgeois' conduct." GR 45.  The District Court also found that the semen and sexual assault evidence was "inflammatory" and "allowed the Government to prove that the murder was only the culminating event in a barrage of abuse that also contained a sexual component." Op. 165.

Indeed, of the "barrage of abuse" cited by the district court, no evidence is more inflammatory and prejudicial than the alleged sexual assault and anal rape of a two year old girl by her own father.  While other evidence of abuse may have been harmful and legally sufficient to support a death sentence, the evidence of semen in the anus of a two year old and physical trauma to her vagina was particularly abhorrent.[13]  Contrary to the Government's argument, GR 44-45, Appellant's death sentence was "based indispensably" on that rape evidence.  <u>Soffar</u>, 368 F.3d 443.

---

[13]<u>See also</u> <u>Coker v. Georgia</u>, 433 U.S. 584, 597-98 (1977) ("We do not discount the seriousness of rape as a crime. It is highly reprehensible. . . Short of homicide, it is the 'ultimate violation of self'"); <u>Kennedy v. Louisiana</u>, 554 U.S. 407, 435 (2008) ("[t]he victim's fright, the sense of betrayal, and the nature of her injuries caused more prolonged physical and mental suffering than, say, a sudden killing by an unseen assassin. The attack was not just on her but on her childhood. Rape has a permanent psychological, emotional, and sometimes physical impact on the child"); <u>id.</u> at 468 ("The immaturity and vulnerability of a child, both physically and psychologically, adds a devastating dimension to rape that is not present when an adult is raped') (Alito, J, dissenting).

Moreover, "based indispensably" is not the proper standard for determining prejudice at sentencing. This Court's prejudice determination is not about assessing whether the crime was terrible even absent evidence of sexual assault. The appropriate inquiry is whether, even in light of those terrible facts, there would have been reason for the jury to extend mercy in this case. That assessment must be made after considering the totality of the mitigation evidence presented both at trial and in the post conviction proceedings. Williams, 529 U.S. at 397 ("prejudice determination was unreasonable insofar as it failed to evaluate the totality of the available mitigation evidence."). The Government's "no-prejudice" at sentencing argument fails to even mention, let alone consider, the mitigating evidence presented in Claim III when considering the impact of Appellant's claim of ineffectiveness for failure to rebut evidence of sexual assault.[14]

---

[14]The Government also erroneously contends that this Court's prejudice analysis is governed by language in Lockhart v. Fretwell, 506 U.S. 364 (1993). GR, 36 ("[prejudice] does not result if the ineffectiveness of counsel does not deprive the defendant of any substantive or procedural right to which the law entitles him." (quoting Fretwell, 506 U.S. at 372)). The Supreme Court has repeatedly rejected the Government's position. See Lafler v. Cooper, 132 S.Ct 1376, 1386 (2012) ("[State] claims that this Court refined Strickland's prejudice analysis in Fretwell to add an additional requirement that the defendant show that ineffective assistance of counsel led to his being denied a substantive or procedural right. The Court has rejected the argument that Fretwell modified Strickland before and does so again now") (citing Williams v. Taylor, 529 U.S. 362, 391 (2000)); Glover v. United States, 531 U.S. 198, 202 (2001).

Under the correct prejudice analysis, this Court must assess the reasonable probability of a life sentence had the jury known and considered that Mr. Bourgeois suffered merciless, chronic and long-standing physical abuse, was sexually abused, has significant intellectual deficits, suffers from a Borderline Personality Disorder, has organic brain damage, and had <u>not</u> sexually assaulted his daughter. <u>See</u> Claim III. Appellant has met that burden. Indeed, despite the nature of the crime, had the jury heard all of this evidence, there is a reasonable probability that at least one juror would have found that Mr. Bourgeois was less morally culpable and not deserving of a death sentence. <u>See</u> AB 40-42, 44-45 (discussing prejudice standard); <u>Garcia v. Quarterman</u>, 257 Fed.Appx. 717, 723 (2007) (5th Cir. 2007) (unpublished) (granting relief where defendant was convicted of aggravated rape and murder of a three-year-old child but the penalty-phase instructions did not permit jurors who credited mitigation of abusive childhood and substance abuse to give "effective voice" to conclusion that defendant was less culpable and not deserving of death).[15] At a

_____

[15]<u>See also,</u> e.g., <u>South Carolina v. Susan Smith</u> (S.C. 1994) (sentenced to life imprisonment *with parole* for killing, by drowning in a lake, her 3-year-old and 14-month-old children); <u>Andrea Yates v. State</u>, 171 S.W.3d 215 (Tex.App. 2005) (sentenced to life imprisonment *with parole* for killing her five children); <u>Rompilla v. Beard</u>, 545 U.S. 374, 378, 383 (2005) (finding prejudice where counsel failed to present mitigating evidence of abuse, neglect and brain damage in case where defendant committed murder by torture and had significant history of violent felonies, including rape); <u>Williams v. Taylor</u>, 529 U.S. 362, 418 (2000) (finding prejudice where counsel failed to present mitigating evidence of

19

minimum, Appellant has established that there is room for debate on this question and thus is entitled to a COA.

Lastly, the Government argues that Appellant was not prejudiced because a challenge to the sexual abuse evidence may have brought further attention to the allegations or the introduction of other harmful evidence. GR 46. However, the Government alleged that semen was found in JG-1999's rectum, that she had trauma to her vagina, and that Appellant should be sentenced to death because he "put his filthy semen in her little body ... his semen is all in that baby." Tr. 3/24/04, 70, 75-76. Moreover, trial counsel *attempted* to cross-examine the Government experts to challenge the semen evidence, *attempted* to argue that "there was no semen," and *attempted* to argue that there was no sexual assault. AB 24. Contrary to the Government's contention, counsel did so without opening the door to any other alleged evidence of inappropriate behavior by Mr. Bourgeois.[16] Thus, presenting the

childhood mistreatment, head injuries and possible organic mental impairments where defendant savagely killed a man with a mattock, beat an elderly woman into a permanent vegetative state, stole two cars, set fire to a home and the city jail, and stabbed a man during a robbery); United States v. Moussaoui, No. 01-CR-455 (E.D. Va.) (life verdict returned against conspirator in 9/11 attacks).

[16]Notably, the allegations of sexual misconduct emanate from Robin Bourgeois, Appellant's ex-wife, who, by the Government's own admission at trial, lied about the circumstances of JG-1999's death, and testified to avoid prosecution in this matter. None of Mr. Bourgeois children, including his two other daughters, have ever alleged that he engaged in sexually inappropriate behavior.

evidence to counter that which was already admitted by the Government and presenting the evidence to support counsel attempted arguments would not have highlighted the issue any further, and would not have opened the door to excluded evidence.

### CLAIM III. THIS COURT SHOULD GRANT A COA ON THE ISSUE OF WHETHER COUNSEL PROVIDED INEFFECTIVE ASSISTANCE DURING THE PENALTY PHASE.

Trial counsel unreasonably failed to investigate his client's background, to provide his experts with sufficient time and critical information, and to prepare and communicate with his own experts. The Government acknowledges that the defense team was dysfunctional, but blames the defense experts and Appellant himself for the failures in the presentation of an accurate and compelling social history and mental health mitigation. The Supreme Court, however, has made it abundantly clear that counsel bears ultimate responsibility for the preparation and presentation of mitigating evidence in a capital case. Additionally, in an attempt to defend counsel's performance, the Government's attributes strategies to counsel that simply were not embraced by counsel at trial. In truth, with regard to the sentencing phase, counsel appeared to embrace a strategy consistent with the evidence set forth during these 2255 proceedings. Unfortunately, however, counsel utterly failed to present available evidence in support of such a mitigation theory. Finally, the Government contends

that regardless of counsel's alleged failures, Appellant could not establish prejudice in this case in light of the aggravating facts of this case. This, of course, is contrary to countless cases, including Supreme Court decisions, that make clear that mitigating evidence can make a difference in even the most horrific of cases.

## A.     Trial Counsel's Deficient Performance

It was defense counsel's failure to prepare for trial that led to their last minute and ineffective decision not to present the substantial mitigating evidence they had at their disposal.  The Government appears to concede that the defense team was dysfunctional, but lays the blame for the failure to present mitigating evidence on Appellant and on the retained experts, rather than on trial counsel.

The Government alleges that defense counsel's failure to present witnesses to describe Appellant's horrific childhood resulted from Mr. Bourgeois' failure to reveal a history of childhood abuse prior to trial.  GR 56.  The Government ignores, however, the fact that counsel possessed substantial evidence of childhood abuse, including the report of an interview with their client in which he revealed such abuse.[17]  P-Ex. 61A; ROA 4182-4185.  The Government also alleges that Mr.

_____

[17]Although Appellant did not relate his childhood history to the Government expert Dr. Estrada or to Dr. Weiner, he did reveal gruesome details of the abuse he suffered as a child to mitigation investigator Bierbaum and to trial counsel.  Pet Ex. 61A; ROA 4182-4185.  Likewise, repeated lay witnesses revealed details of the childhood abuse pre-trial. Id. Surprisingly, trial counsel failed to provide any

22

Bourgeois' "lie" about his coma rendered the results of a neuropsychological

evaluation revealing substantial intellectual deficits and brain damage essentially

unusable, see, e.g., GR 56-57, when in fact the doctor who performed that

neurospychological testing testified at the evidentiary hearing that the opposite was

true, and that counsel was unreasonable in failing to call him to testify at trial.  ROA

2941 (Dr. Weiner testified "that regardless of what the cause was, [Mr. Bourgeois]

has some brain damage.").[18]

The Government next asserts that counsel's decision to rely on cross-

examination of the Government's mental health expert, Dr. Estrada, to elicit the only

mental health evidence in support of a life sentence was reasonable, even though 1)

---

information about Mr. Bourgeois' traumatic life history to their own expert, Dr. Weiner. ROA 2901-2902.  ROA 2938.

[18]Counsel had Dr. Weiner evaluate Appellant on February 28, 2004, just two days prior to the start of trial.  ROA 2901.  Counsel never spoke with Dr. Weiner about the coma issue, nor did they provide Dr. Wiener with any records, including medical records that documented other head injuries.  ROA 2901-2902.  Finally, they failed to consult with Dr. Weiner about the substance and basis of his conclusions.  Had they done so, he would have told them that whether Mr. Bourgeois had gone into a coma was not crucial to his findings.  ROA 2941.

Thus, the Government's claim that Dr. Weiner "had to change his opinion entirely" when he discovered that Mr. Bourgeois' report of a coma was inaccurate is a gross misrepresentation of the record.

Also, at the evidentiary hearing, the Government's own expert conceded that Mr. Bourgeois' neuropsychological tests reveal brain damage.  ROA 4890-4891, 4894.

Dr. Estrada was not allowed to rely on the information obtained, or the reports generated, by the defense experts; 2) Dr. Estrada had never conducted an evaluation of the defendant for the purposes of mitigation; 3) Dr. Estrada was only able to speculate about Appellant's abusive background, and was not able to refer to Appellant's brain damage at all; and 4) counsel took absolutely no steps to ensure that Dr. Estrada, who was retained and instructed by the Government, possessed adequate information about Appellant.[19]

In yet another futile attempt to shift blame from counsel, the Government also faults the defense experts for the failures in the penalty phase. The Government claims that Dr. Cunningham failed to inform counsel that he was not receiving the type of information necessary to conduct his evaluation. GR 58. This argument is specious. First, at the 2255 evidentiary hearing, counsel acknowledged that they were in charge of the defense team and responsible for its functioning. ROA 4061-62. Counsel's concession is supported by the ABA Guidelines. See Guideline 10.4(B) ("Lead counsel bears overall responsibility for the performance of the defense team,

_____

[19]Dr. Estrada testified during 2255 proceedings that he believed that any testimony he offered regarding Appellant at trial was incomplete in light of all the information he lacked at the time. P-Ex. 164, 18.

and should allocate, direct, and supervise its work. . . .").[20]  Second, the Government

ignores the documentary evidence that reveals that Dr. Cunningham informed counsel

on December 1, 2003, that he had not yet received any information from anyone

about the case, despite having been retained months earlier.  ROA 3615.  Thus,

counsel was made aware of the problems on the case months before trial.  The fault

for any lack of communication on the team rested in the hands of trial counsel, not

with counsel's expert.

The Government next contends that counsel reasonably refrained from

presenting certain mitigating evidence because it presumed that Mr. Bourgeois

committed the offense, which was inconsistent with the guilt phase defense.  GR 66.

First, the Government's argument would render the presentation of mental health and

background information of a defendant unnecessary in any capital case where the

defendant asserts his innocence.  This is inconsistent with the Supreme Court's

capital case law.  Second, even if this strategy might be reasonable under some

limited circumstances, it was not in fact the strategy embraced by counsel at trial.  In

his penalty phase closing argument, counsel explained that:

> with the lingering effects of childhood and stress swirling around him,
> Bourgeois just 'snapped' and 'it got out of hand and ended up killing

---

[20]The mitigation investigators were retained by and worked for defense
counsel, not Dr. Cunningham.  ROA 4062.

her.  That's not to excuse his behavior; it's to – in an attempt to try to explain what happened."

ROA 5847.  See also Tr. 3/24/04, 61 ("Poor JG1999 ended up the victim of that, the victim of what Alfred Bourgeois had been becoming, the victim of who he ended up because he started out getting abused himself.").  Thus, clearly counsel was acknowledging his client's guilt by the time of the sentencing phase.  His closing argument set forth a theory of mitigation; unfortunately, however, the minimal evidence presented by counsel failed to support this theory.[21]  Instead of hearing the details of the extensive abuse suffered by Appellant as a child, as well as the resulting mental health impairments and brain damage, all of which supported counsel's theory that Appellant just "snapped," jurors heard only a few unadorned statements regarding physical abuse.

The Government further defends counsel's performance by alleging that counsel is "permitted to rely upon the expertise of its experts," and that "the errors of psychological experts are not automatically attributable to counsel."  GR 69, 71.  The

---

[21]The Government states that "[a]t the penalty phase, trial counsel argued that the Government had not proven premeditation during the guilt phase, an indirect challenge to the guilty verdict, designed to invoke any residual doubt about the guilt verdict.  Dr. Estrada's presentation in the penalty phase bolstered this argument."  GR 78.  Even accepting the Government's characterization of counsel's penalty phase argument, this does not account for counsel's failure to present the additional mental health and mitigating evidence, all of which was consistent with such a lack-of-premeditation theory.

Government relies on a decision from the Sixth Circuit in support of the latter contention.  Id. at 71 (citing Skaggs v. Parker, 235 F.3d 261 (6th Cir. 2000)).  Skaggs held that while "counsel should have taken more time and given more thought to their expert witness," Skaggs, 235 F.3d at 268, counsel was not ineffective for presenting an unqualified witness during the guilt phase.  The Sixth Circuit, however, *did* find counsel ineffective for presenting that same expert witness during the penalty phase of the trial.  Id. at 265.  Accordingly, the Sixth Circuit granted a COA and granted relief under the Sixth Amendment.  In any event, Appellant has never alleged that the effectiveness of the experts retained by counsel was grounds for relief.  Instead Appellant has alleged that it was counsel's failures – failure to investigate, provide accurate information, and consult with his experts – that rendered the mitigation presentation inadequate.  As explained above, the responsibility for the presentation of mitigating evidence falls squarely on counsel's shoulders.[22]

## B.    Appellant was Prejudiced

In the end, the Government experts agree that Mr. Bourgeois was abused, neglected, and abandoned as a child, and that this childhood maltreatment contributed

---

[22]The defense experts testified at the 2255 hearing that they were asked to conduct their evaluations on the eve of trial; were not provided with any background materials; and had no substantive conversations with counsel about the case.  AB 74-75.

to the development of a profound personality disorder.  AB 64-65. Notably, the Government doctors also agreed that Mr. Bourgeois did not meet the criteria of anti-social personality disorder or sociopathy.  Id. at 65.

Additionally, it is beyond dispute that Borderline Personality Disorder can cause psychotic breaks when an affected individual experiences sufficient stressors, such as those experienced by Mr. Bourgeois in the weeks leading up to the death of his daughter.  AB 65. Also, the Government experts do not dispute that Appellant's intellectual functioning is, at best, in the borderline range, AB 66-67, and that he suffers from organic brain deficits that impact his ability to control his impulses and engage in executive decision making, AB 67-69.  As discussed in his Brief, this type of evidence repeatedly has been found compelling and mitigating by the Supreme Court, and the failure of counsel to present such evidence routinely has served as grounds for relief under the Sixth Amendment.      Finally, the Government contends that despite the fact that the district court offered a prejudice standard other than Strickland, the lower court nonetheless applied the appropriate standard. GR 88. The Government's discussion in support of this contention serves only to underscore Appellant's claim that reasonable jurists could disagree on the appropriateness of the district court's standard.  Also, with regard to Strickland prejudice, the Government claims that in light of the heinous nature of the crime and the "overwhelming

evidence of aggravating factors," Appellant cannot establish such prejudice.  GR 89.

Again, the Government is wrong; reasonable jurist can at least debate this issue.

Compelling mitigation can make a difference in even the most aggravated case. See,

Claim II at 21 n. 15, supra (citing cases).

## CONCLUSION

For the reasons set forth above, Appellant respectfully requests that the Court

grant a Certificate of Appealability, which requires a showing (1) that reasonable

jurists would find the district court's "assessment of the constitutional claims

debatable or wrong," or (2) that reasonable jurists would find "it debatable whether

the petition states a valid claim of the denial of a constitutional right" and "debatable

whether [this Court] was correct in its procedural ruling." Slack, 529 U.S. at 483-84.

Appellant has met these requirements.

Respectfully Submitted,

/s/ Victor J. Abreu
Victor J. Abreu
Supervising Assistant Federal Defender
Federal Community Defender
Eastern District of Pennsylvania
Suite 545 West – The Curtis Center
Philadelphia, PA 19106
215-928-0520
Victor_Abreu@fd.org

## Certificate of Service

I, Victor Abreu, hereby certify that the foregoing brief was served on Assistant United States Attorney Renata Gowie, Counsel for Respondent-Appellee, by providing electronic service through ECF on August 16, 2012.

/s/ Victor Abreu
Counsel for Alfred Bourgeois

## Additional ECF-Related Certifications

I hereby certify (1) that required privacy redactions, if any, have been made, (2) that the electronic submission is an exact copy of the paper document, and (3) that the document has been scanned for viruses with the most recent version of a commercial virus scanning program and is free of viruses.

/s/ Victor Abreu
Counsel for Alfred Bourgeois

## Certificate of Compliance with Rule 32(a)

1.    This proposed Reply Brief contains 6,948 words.

2.    The brief complies with the typeface requirements of Fed. R. App. P. 32(a)(5) and the type style requirements of Fed. R. App. P. 32(a)(6) because this brief has been prepared in a proportionally spaced typeface using **Word Perfect 12.0 in 14 point Times New Roman**.

/s/ Victor Abreu
Counsel for Alfred Bourgeois